*Hartford,*
*June,*
*1823.*

Bridge Co.
*v.*
Granger.

—————

## ALFORD *against* BELDEN.

The parties entered into a written agreement, by which the plaintiff bound himself to take into his possession a vessel belonging to the defendant, as she then lay at a distant wharf, and take her down to below her wales, put in another set of top-timbers, wales and waist, take off her quarter-deck, put on another flush-deck fore and aft, replace all defective timbers, and raise the vessel to a two-decker: for which the defendant agreed to give the plaintiff a bill of sale of one third part of the vessel. On examination, it was discovered, that the bottom of the vessel, and all the plank and timbers below the wales, were entirely defective; whereupon the plaintiff, under the authority, and by request, of the defendant, made sundry repairs upon the bottom of the vessel below the wales. Held, that the repairs so made by the plaintiff were not included in the written agreement, and that for such repairs the plaintiff was entitled to a reasonable compensation, in addition to the remuneration provided by the written agreement.

This was an action of *assumpsit* on a special agreement, with general counts for work and labour done, materials furnished, &c.

The cause was tried, on the general issue, at *Hartford,* *February* term, 1823, before *Bristol,* J.

The plaintiff gave in evidence the agreement stated in the declaration, which was as follows: "An agreement made this 24th day of *May,* 1820, by and between *Thomas Belden* of *Hartford,* and *Nathaniel Alford* of *Windsor.* Said *Alford* agrees to take the brig *Jerome,* belonging to said *Belden,* as

*Alford*
*v.*
Belden.

she now lies at *Chatham*, with all that belongs to her, into his possession, and transport her to *Windsor*, and take her down to below her wales, and put in another set of top-timbers, wales and waist, take off her quarter-deck, and put on another flush-deck fore and aft, and replace all timbers that are defective, and raise said brig to a two-decker, so that she will be five feet, four inches, between decks, and do all carpenter's, joiner's, blacksmith's, painter's and caulker's work, that are necessary, in a plain, faithful, workmanlike manner and form, and find all materials for said work, and deliver said brig at *Hartford*, and pay all bills and expenses on said brig until returned to *Hartford*, and finished as above. Said *Belden* agrees to give said *Alford*, for said work and materials, when finished, and delivered as above, a bill of sale of one third part of said brig, and all that belongs to her.

> *Nathaniel Alford.*
> *Thomas Belden.*"

" It is further agreed, that if said *Belden* pays any of the bills of said brig, or advances any to said *Alford*, said *Alford* is to pay said *Belden's* account and advances, or to come out of the sales of said brig, when he gives a bill of sale of her to said *Alford*. *N. B.* If, after the above is completed, the parties wish to put a head or carved work, or sails and rigging, or any extra work, it is understood, that it is to be done and paid as each one owns in said brig. *Nathaniel Alford.*
> *Thomas Belden.*"

The plaintiff claimed to have proved, that this vessel was removed to *Windsor*, agreeably to the contract, and taken down below her wales ; and upon this being done, it was discovered, that the bottom of the vessel, and all below the wales, was entirely defective and rotten ; and that it was necessary, to render the repairs contracted for of any use, and to make the vessel seaworthy, that many new timbers should be put into the bottom far below the wales, and that the old plank should be taken off, and replaced with new, and that there should be a new ceiling ; all which was in consequence of the old timber, plank and ceiling proving, upon examination, defective and rotten. The plaintiff further claimed to have proved, that he notified the defendant of the state of the vessel, and requested him to see and examine her ; that the defendant accordingly went to the vessel, and on view of her condition, authorized and requested the plaintiff to cut her down till she should be sound, and completely to overhaul

*Hartford,*
*June,*
*1823.*

and repair the whole bottom ; and that, in pursuance of such request, the plaintiff did overhaul the bottom, replaced all timbers, which were defective, in the bottom below the wales, put on new plank and ceiling, and performed divers other repairs on the bottom ; for all which the plaintiff sought to recover, on the general counts, over and above what he claimed to be due him for the performance of the written agreement.   The defendant denied, that he made any such request, or that he gave any such authority.   The defendant, also, claimed, that the repairs effected on the bottom of the vessel, and below her wales, were all included in the written agreement, and that the plaintiff was, by virtue thereof, under obligation to perform the repairs, for which he sought additional compensation.   The judge charged the jury, that the repairs made on the bottom of the vessel, and below her wales, for which an extra compensation was claimed by the plaintiff, were not included within the written agreement of the parties ; and that, if the plaintiff had made the repairs in question under the authority, and by request, of the defendant, as claimed by the plaintiff, for such repairs the plaintiff was entitled to recover a reasonable compensation.   The jury returned a verdict for the plaintiff ; and the defendant moved for a new trial, on the ground of a misdirection.

*Alford*
*v.*
*Belden.*

*T. S. Williams* and *I. Perkins*, in support of the motion, contended, 1. That all the repairs claimed by the plaintiff to have been effected by him on the brig *Jerome*, were included in the written agreement declared on.

2. That if the repairs on the brig below the wales were not included in the written agreement, no recovery could be had under the general counts.

3. That if either of the general counts were sustainable, the plaintiff could recover only according to the interest of the defendant in the repairs, which was but two thirds.

*N. Smith* and *Tousey*, contra.

HOSMER, Ch. J.   The plaintiff has brought an action of *assumpsit* for work done by him on the bottom of the brig *Jerome*, below her wales.   A written contract had been made between the parties, in which it was agreed, by the defendant, the owner of the brig, that on the performance of certain repairs upon her upper-works, which the plaintiff con-

*Hartford,*
June,
1823.

Alford
*v.*
Belden.

tracted to do, he should become the owner of one third part of her.   The judge charged the jury, that the repairs made on the bottom of the vessel, below the wales, were not included in the written contract; and if such repairs were made under the authority, and by request, of the defendant; that the plaintiff was entitled to a reasonable compensation. To review the propriety of this charge, is the object of the present motion.

The sole controversy between the parties, depends on the solution of the question, Whether, by the written contract alluded to, the plaintiff contracted to repair the bottom of the brig below her wales.   If he did, he agreed to take his compensation, in a conveyance of one third of her; but if he did not thus contract, the charge of the judge was indisputably correct.

It appears from the written contract, recited in the motion, that the plaintiff agreed to take the brig *Jerome*, as she then lay at *Chatham*, into his possession, and transport her to *Windsor;* and *to take her down to below her wales*.   This leading expression in the agreement, imports, that the plaintiff was to reduce the vessel down to her wales, and *immediately* below them.   If the contract be construed to extend beyond this limit, it must be considered as including the entire bottom of the brig, even to the extremity of her keel; for which no one can seriously contend.   Immediately succeeding the agreement, so far as it has been referred to, the plaintiff engaged to put in another set of top-timbers, wales and waist, take off her quarter-deck, and put on another flush-deck fore and aft.   These particular provisions, except the top-timbers, all relate to that part of the brig, which was above the limit before-mentioned, and harmonize with the construction already given.   The next expression in the agreement obliged the plaintiff to " replace all timbers that were defective, and raise said brig to a two-decker."   By the defendant, it is insisted, that the expression is entirely indefinite, and obliged the plaintiff to replace defective timbers in every part of the vessel; but this construction is too extravagant, for a moment to be admitted.   It is equivalent to the assertion, that the plaintiff bound himself to build the brig anew, if necessary, and frustrates the clause in the contract, first mentioned; which obviously is a key to the construction of the agreement.   The error of the defendant consists, in giving an exposition to the phrase in question, without regard to

the other parts of the contract. But the construction must be made on the whole agreement. The contract, taken together, runs thus; that the defendant shall take the brig down below her wales, put in another set of top-timbers, wales, and waist, take off her quarter-deck, and put on another quarter-deck fore and aft, "and replace all timbers that are defective." This latter clause has relation to the preceding expressions, and merely intends, that defective timbers are to be replaced by the plaintiff, within the limits of his agreement. *Sheppard,* in his *Touchstone* of *Common Assurances, p.* 87., after stating the principle, that the construction must be on the entire deed, illustrates the subject, by putting a case very much in point. " If" (says he) " a man make a feoffment of all his land in *D.* with common *in omnibus terris suis;* this common shall be intended in the lands granted in *D.* only, and not elsewhere ; for it must be understood *secundum subjectam materiam.*"

The general object of the parties, was, to put on the brig an additional deck ; and probably the contract would not have existed, if her bottom had been considered to be materially unsound. At least, it is a fair presumption, had it been anticipated that her bottom was in a defective condition, that the repair of it, would have constituted a prominent feature in the agreement. It could never have been the intention of the parties, to put on the brig a double deck, if a suitable foundation was deficient. But it is entirely probable, from the silence of the agreement, that the defects without the contract were latent, and first discovered on taking the brig down below her wales.

The construction of the contract, by the judge at the trial, was entirely correct. It is an admitted fact, that the defendant has not conveyed to the plaintiff the third part of the vessel according to his agreement ; and this relieves the case from any objection, relative to the sum received.

The other Judges were of the same opinion.

New trial not to be granted.